**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shelby Reichsfeld, | No. CV-20-01067-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Shelby Reichsfeld's appeal from the Commissioner's denial of her application for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits under 42 U.S.C. §§ 401–434, 1381–1383f. (Doc. 1). The appeal is fully briefed. (Docs. 17, 20, 21). The Court now rules.

## I.    BACKGROUND

Plaintiff is 29 years old, completed high school, and has past relevant work experience as an office assistant. (Doc. 17 at 2). Plaintiff argued that the following conditions rendered her disabled: "degenerative disc disease, tremors, asthma, headaches, common variable hypogammaglobinemia, and obesity." (Doc. 14-3 at 24). Plaintiff has not engaged in substantial gainful activity since March 2, 2010, the alleged onset date. (*Id.*).

Plaintiff filed applications for SSDI and SSI benefits in February and September of 2016, respectively. (Docs. 17 at 2; 14-3 at 21). Those applications were denied at the initial stage, (Doc. 14-3 at 21), upon reconsideration, (*Id.*), and by the Administrative Law Judge ("ALJ") after a hearing, (Docs. 17 at 2; 14-3 at 21–32). The Appeals Council denied

review. (Doc. 14-3 at 2–4). Plaintiff then sought review in this Court. (Doc. 1).

### a.    The Disability Determination

A claimant must show she "is under a disability" to qualify for disability insurance benefits. 42 U.S.C. § 423(a)(1)(E). The claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging in any "substantial gainful activity." *Id.* § 423(d)(1)–(2). The Social Security Administration has created a five-step process for an ALJ to determine whether the claimant is disabled. 20 C.F.R. § 404.1420(a)(1). Each step can be dispositive. *See id.* § 404.1420(a)(4). "The burden of proof is on the claimant at steps one through four," and the burden shifts to the Commissioner at step five. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the ALJ examines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If not, then the ALJ proceeds to step two. At step two, the ALJ considers whether the claimant has a physical or mental impairment or a combination of impairments that are "severe." *Id.* § 404.1520(a)(4)(ii). If the ALJ finds that there is severe impairment, then the ALJ proceeds to step three to determine whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* § 404.1520(a)(4). The RFC is the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ determines whether the claimant can still do "past relevant work" in light of the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the final step and examines whether the claimant "can make an adjustment to other work" considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If an adjustment can be made, the claimant is not disabled. *Id.*

### b.    The ALJ's Decision

The ALJ denied Plaintiff social security benefits because she determined that

Plaintiff was "not disabled" and was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Doc. 14-3 at 32). After finding that Plaintiff was not engaged in substantial gainful activity since March 2, 2010 at step one, the ALJ determined, at step two, that Plaintiff "has the following severe impairments: degenerative disc disease, tremors, asthma, headaches, common variable hypogammaglobinemia, and obesity." (*Id.* at 24–26).

At step three, the ALJ concluded that Plaintiff's impairments, singularly or in combination, did not "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." (*Id.* at 26). Accordingly, the ALJ conducted an RFC analysis and found that Plaintiff could perform "sedentary work." (*Id.* at 26–30). In doing so, the ALJ gave "substantial weight" to the opinions of Doctors Bargan, Johnson, Hirsch, and McLean. (*Id.* at 29). The ALJ further gave "limited weight" to the opinion of Doctor Solomon, and little weight to the opinions of Doctor Wechsler and Nurse Practitioner ("NP") Dundon. (*Id.* at 30).

At step four, the ALJ determined that Plaintiff had no past relevant work. (*Id.* at 30–31). At step five, the ALJ concluded that Plaintiff could perform the occupations of document preparer (DOT 249.587-018), call out operator (DOT 237.367-014), and addresser (DOT 209.587-010), consistent with the vocational expert's testimony. (*Id.* at 31–32). Thus, the ALJ determined that Plaintiff had not been under a disability from March 2, 2010 through the date of the ALJ's decision. (*Id.* at 32).

## II.   LEGAL STANDARD

The ALJ's decision to deny disability benefits may be overturned "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young*

*v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler,* 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Id.* (citations omitted); *see Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Benton*, 331 F.3d at 1035 ("If the evidence can support either outcome, the Commissioner's decision must be upheld.").

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted). The Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

## III.   ANALYSIS

Here, Plaintiff alleges that the ALJ erred in assigning little weight to the opinions of Dr. Wechsler and NP Dundon without providing specific and legitimate reasons for doing so. (Doc. 17 at 10–13). Plaintiff also argues that the ALJ erred in rejecting Plaintiff's symptom testimony and in rejecting lay witness testimony. (*Id.* at 13–19). The

Commissioner agrees that the ALJ erred in assigning little weight to the opinions of Dr. Wechsler and NP Dundon, and he requests that the Court remand this matter to the agency for further proceedings. (Doc. 20 at 3). Plaintiff asserts that the appropriate action here is for the Court to remand for an immediate award of benefits. (Doc. 17 at 20–21).

### a.    The Opinions of Dr. Wechsler and NP Dundon

The Court agrees with the parties that the ALJ erred in assigning little weight to the opinions of Dr. Wechsler and NP Dundon without providing specific and legitimate reasons for doing so. The ALJ stated that she gave little weight to the opinions of Dr. Wechsler and NP Dundon because "opinions that an individual is disabled and other issues reserved to the Commissioner are not medical opinions," the opinions "merely concluded disability or inability to work without explanations," and Plaintiff 's daily activities indicate "that [Plaintiff's] asthma/allergies are not as severe as opined." (Doc. 14-3 at 30).

As the Commissioner notes, however, Dr. Wechsler and NP Dundon opined on more than whether Plaintiff was disabled and discussed Plaintiff's inability to leave her home, need for a walker and bilateral stair rails due to balance issues, illness and hospitalizations, and meningitis-related symptoms. (Docs. 20 at 4; 14-10 at 178; 14-11 at 4; 14-20 at 30; 14-21 at 107). Further, while Plaintiff's daily activities may indicate that Plaintiff's asthma and allergies are not as severe as stated, Dr. Wechsler and NP Dundon based their medical opinions, in part, on Plaintiff's meningitis-related symptoms, not just her asthma or allergies. (*Id.*). Thus, the ALJ's assigning little weight to the opinions of Dr. Wechsler and NP Dundon was not supported by substantial evidence, so the Court will vacate the ALJ's decision on this ground.

### b.    Plaintiff's Symptom Testimony

Plaintiff further argues that the ALJ improperly rejected Plaintiff's symptom testimony. (Doc 17 at 13–17). The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the

record." (Doc. 14-3 at 27).

### 1. Legal Standard

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a Plaintiff's subjective symptom testimony. "First, the ALJ must determine whether the Plaintiff has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014)). If the Plaintiff presents such evidence, the ALJ then evaluates the Plaintiff's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a Plaintiff produces objective medical evidence of an underlying impairment, an ALJ may not reject a Plaintiff's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the Plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the Plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the Plaintiff's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996)). If the ALJ relies on these factors and her reliance is supported by substantial evidence, the Court "may not engage in second guessing." *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)).

### 2. Discussion

The ALJ determined that the medical and other evidence conflicted with Plaintiff's symptom testimony. (Doc. 14-3 at 27). The ALJ found this conflicting evidence to be Plaintiff's improvement through treatment, the objective medical evidence, and Plaintiff's

daily activities. (*Id.*).

### A.   Treatment

The ALJ found that Plaintiff's symptom testimony was not consistent with the evidence of Plaintiff's improvement through treatment. (*Id.* at 27–28). The ALJ cited numerous examples to support her finding including Plaintiff doing well after her treatment for meningitis related symptoms, (Docs. 14-3 at 27; 14-12 at 103; 14-15 at 188, 190, 192; 14-19 at 3, 5, 15, 17, 19, 29, 31, 34, 36, 44, 46, 52, 76, 85, 88; 14-20 at 58, 87, 89; 14-22 at 95), improvement in Plaintiff's headaches through medication, (Docs. 14-3 at 28; 14-9 at 102; 14-22 at 40, 67, 88), management of Plaintiff's asthma through medication, (Docs. 14-3 at 28; 14-11 at 33), and improvement in allergic reactions through the use of an EpiPen and Benadryl, (Docs. 14-3 at 28; 14-9 at 56, 65).

Plaintiff does not contest the finding that her medical impairments improved through treatments, but simply argues that they did not improve "to the extent that her ability to sustain work activity was restored." (Doc. 17 at 15). Plaintiff avers that her use of an EpiPen for allergies shows the severity of her allergies, that the administration and side effects of treatments inhibit the ability to work, and that her treatments were abortive, not preventative. (*Id.*).

At most, Plaintiff's assertions show the record is ambiguous as to improvement in Plaintiff's symptoms through treatment, and, "given that the ALJ is the 'final arbiter with respect to resolving ambiguities in the medical evidence,'" the Court defers to the ALJ's finding. *Singh v. Comm'r of Soc. Sec. Admin.*, No. CV-19-02315-PHX-MTM, 2020 WL 5757620, at *3 (D. Ariz. Sept. 28, 2020) (quoting *Tommasetti*, 533 F.3d at 1041). Because the ALJ determined that Plaintiff's condition improved through treatment, the Court finds that the ALJ did not err in discounting Plaintiff's symptom testimony on this basis. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (holding that evidence of effective treatment is sufficient to discount a claimant's testimony regarding symptom severity) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)); *see also Singh.*, 2020 WL 5757620, at *2–3 (affirming ALJ's discounting of plaintiff's testimony, in part, because

plaintiff's conditions improved with medication).

### B. Objective Medical Evidence

The ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence." (Doc. 14-3 at 27). The ALJ went on to discuss the medical evidence she found inconsistent citing records indicating that Plaintiff's aseptic meningitis was stable, (Docs. 14-3 at 27; 14-22 at 95), Plaintiff's doctors consistently indicated she was in no acute distress, (Docs. 14-3 at 27; 14-10 at 160, 168; 14-11 at 42, 46; 14-12 at 52, 59, 64, 105, 111; 14-19 at 9, 13; 14-20 at 60, 67, 73, 75, 81, 85, 93; 14-24 at 6), Plaintiff had full strength in her extremities, normal reflexes, normal coordination, and normal sensation, (Docs. 14-3 at 28; 14-9 at 101; 14-10 at 178, 181, 184, 187, 190, 193, 195–96; 14-11 at 51; 14-13 at 19–20, 23; 14-14 at 5; 14-15 at 79; 14-20 at 98, 102, 119; 14-22 at 10, 91), a nerve conduction study of Plaintiff's lower extremity was normal, (Docs. 14-3 at 28; 14-22 at 83), Plaintiff's lungs were typically clear to auscultation bilaterally with no wheezes or crackles, (Docs. 14-3 at 28; 14-11 at 46; 14-12 at 52; 14-19 at 13), and Plaintiff's hand tremors were barely perceptible at times, (Docs. 14-3 at 28; 14-10 at 187, 190, 193, 196).

Plaintiff argues that the ALJ failed to "identify any specific records contrary to any of [Plaintiff's] specific statements regarding her limitations." (Doc. 17 at 14). The ALJ, however, specifically noted that the cited medical records did not support the extreme limitations Plaintiff asserted with respect to her meningitis symptoms, asthma, allergies, and hand tremors. (Doc. 14-3 at 28). Thus, the Court finds the ALJ sufficiently tied her characterization of the medical record to Plaintiff's symptom testimony. See *Lewis v. Comm'r of Soc. Sec. Admin.*, No. CV-20-00765-PHX-MTL, 2021 WL 791467, at *4 (D. Ariz. Mar. 2, 2021) (finding that ALJ, by citing specific instances throughout a multi-year period, adequately tied countervailing medical record to plaintiff's symptom testimony when discounting that testimony); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

### C.    Daily Activities

The ALJ additionally found that Plaintiff's "activities of daily living are not consistent with a finding of disability." (Doc. 14-3 at 29). Plaintiff's activities included running errands for her family, knitting, cross stitching, shopping in stores, cosplay, going to salons, attending renaissance festivals, vacations to places including Disneyland, road trips, and playing card games and boardgames with friends. (Docs. 14-3 at 28–29; 14-7 at 42–45, 91, 94–95, 122; 14-15 at 186). The ALJ determined that "the fact that [Plaintiff] is able to do these activities indicates that she is not as limited as alleged." (Doc. 14-3 at 29).

Plaintiff avers that, while she performs the above daily activities, she does so only with difficulty and accommodations from those around her. (Doc. 17 at 16). However, even if Plaintiff's daily activities suggest some difficulty functioning, they may be grounds for discrediting her testimony "'to the extent that they contradict claims of a totally debilitating impairment.'" *Wennet v. Saul*, 777 F. App'x 875, 877 (9th Cir. 2019) (quoting *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012)). Here, the ALJ summarized Plaintiff's claims that she suffered significant disabilities including meningitis related vertigo, muscle spasms, headaches, hand tremors, ocular migraines, "get[ting] sick when she goes out in public," dizziness, allergy related numbness, limited ability to sit and stand, and difficulty lifting large and small items. (*See* Doc. 14-3 at 27). The ALJ reasonably found that Plaintiff's daily activities refuted her testimony, even if she had some difficulty while performing these activities. *See Singh*, 2020 WL 5757620, at *3 (affirming ALJ's determination that daily activities refuted symptom testimony even though plaintiff experienced difficulty while engaging in activities).

Plaintiff further argues that the differences between activities of daily living and activities of a full-time job are not equivalent, so the ability to engage in certain activities of daily living should not have been used to discredit Plaintiff's symptom testimony. (Doc. 17 at 15–16). Yet, "the ALJ is not required to show that a claimant's activities are transferable to the work setting in order to discount her testimony on their account. Rather, an ALJ may consider whether a claimant engages in daily activities that are simply

1    inconsistent with her allegations or that suggest that they are exaggerated, irrespective of

2    whether the activities are transferable to a work setting." *Handy v. Comm'r of Soc. Sec.*

3    *Admin.*, No. CV-19-04545-PHX-JZB, 2020 WL 5699001, at *4 (D. Ariz. Sept. 24, 2020)

4    (citing *Molina*, 674 F.3d at 1112).

5         Plaintiff additionally contends that she was not able to engage in all of the listed

6    daily activities with consistency or for long periods. (Doc. 17 at 16). Even if the evidence

7    is not clear on how long or consistently Plaintiff performed her daily activities, as long as

8    the ALJ's determination is reasonable, it is not the Court's role to second-guess it. *See*

9    *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (holding that, even when record

10   was equivocal about how long and often plaintiff engaged in daily activities, because ALJ's

11   interpretation was reasonable the court would not second-guess it). Here, the ALJ provided

12   a reasonable determination based on substantial evidence that Plaintiff's daily activities

13   were incompatible with the severity of her alleged symptoms. Thus, the ALJ did not err in

14   discounting Plaintiff's symptom testimony. *See Ghanim v. Colvin*, 763 F.3d 1154, 1165

15   (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of

16   symptoms alleged can support an adverse credibility determination."); *Singh*, 2020 WL

17   5757620, at *3 (finding ALJ did not err in discounting plaintiff's allegations of disabling

18   symptoms and limitations because they were inconsistent with her reported activities).

19              **3.    Conclusion Regarding Symptom Testimony**

20        Because the ALJ provided specific and legitimate reasons for discounting Plaintiff's

21   symptom testimony, including Plaintiff's improvement through treatment, the objective

22   medical evidence, and Plaintiff's daily activities, the Court will not overturn the denial of

23   disability benefits on this ground. *See Thomas*, 278 F.3d at 959 ("If the ALJ's credibility

24   finding is supported by substantial evidence in the record, we may not engage in second-

25   guessing.").

26         **c.    Lay Witness Testimony**

27        Plaintiff additionally argues that the ALJ erred in rejecting lay witness testimony.

28   (Doc. 17 at 17–19). The testimony at issue was given by Plaintiff's mother, fiancé, sister,

1    and friend. (*Id.* at 18). The ALJ, however, did not "reject" the testimony by these witnesses.

2    Instead, the ALJ gave "some weight to these opinions to the extent they are supported by

3    the medical evidence of record." (Doc. 14-3 at 30). The ALJ found that, while the lay

4    witness testimony bore some weight, it was "not persuasive of warranting additional

5    limitations in the residual functional capacity." (*Id.*).

6        "Competent lay witness testimony cannot be disregarded without comment, and in

7    order to discount competent lay witness testimony, the ALJ must give reasons that are

8    germane to each witness." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1007 (9th

9    Cir. 2015) (internal quotation marks and alterations omitted) (citing *Molina*, 674 F.3d at

10   1114). The ALJ, however, need not "discuss every witness's testimony on a [sic]

11   individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for

12   rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting

13   similar testimony by a different witness." *Molina*, 674 F.3d at 1114.

14       Here, the ALJ did not reject the lay witness testimony. To the contrary, the ALJ

15   cited the lay opinions and gave them some weight "to the extent they are supported by the

16   medical evidence of record." (Doc. 14-3 at 30). To the extent that the ALJ rejected the

17   testimony that was not supported by the medical record, lack of record support is an

18   appropriate ground on which to reject the testimony of a lay witness. *See McGraw v. Saul*,

19   817 F. App'x 415, 417 (9th Cir. 2020) (holding it was appropriate to reject lay testimony,

20   in part, because it was inconsistent with medical evidence in the record); *Shultes v.*

21   *Berryhill*, 758 F. App'x 589, 593 (9th Cir. 2018) (same).

22       **d.    Remedy**

23       Given the errors in the ALJ decision, Plaintiff asserts that the Court should credit

24   the opinions of Dr. Wechsler and NP Dundon as true and remand the case for an immediate

25   award of benefits. (Doc. 17 at 20–21). The Commissioner argues that there are ambiguities

26   and inconsistencies in the record, so an immediate award of benefits would be improper.

27   (Doc. 20 at 4–8). Instead, the Commissioner asks the Court to remand the matter for further

28   administrative proceedings. (*Id.*).

1          **1.      Legal Standard**

2          "A district court may reverse the decision of the Commissioner of Social Security,

3    with or without remanding the cause for a rehearing, but the proper course, except in rare

4    circumstances, is to remand to the agency for additional investigation or explanation."

5    *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal citations, quotations, and

6    alteration omitted). "Where . . . an ALJ makes a legal error, but the record is uncertain and

7    ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r

8    of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). This is known as the ordinary

9    remand rule. *Gonzales v. Thomas*, 547 U.S. 183, 185 (2006).

10         When "no useful purpose would be served by further administrative proceedings

11   and the record has been thoroughly developed," a district court may credit the improperly

12   rejected opinions as true and remand to the agency for an immediate award of benefits. *Hill

13   v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (internal quotation marks omitted). The

14   Ninth Circuit has developed a three-element test to determine when a remand for an award

15   of benefits is appropriate known as the "credit-as-true rule." *Treichler*, 775 F.3d at 1100.

16   First, a court asks whether the "'ALJ has failed to provide legally sufficient reasons for

17   rejecting evidence, whether claimant testimony or medical opinion.'" *Id.* at 1100–01

18   (quoting *Garrison*, 759 F.3d at 1020).

19         Second, a court reviews the record as a whole and determines whether the record

20   has been fully developed, or whether there are outstanding issues that must be resolved and

21   whether further administrative proceedings would be useful. *Id.* at 1101; *Dominguez*, 808

22   F.3d at 407. Further administrative proceedings are generally useful where a record has not

23   been fully developed, there is a need to resolve conflicts or ambiguities, or the presentation

24   of evidence "'may well prove enlightening.'" *Treichler*, 775 F.3d at 1101 (quoting *I.N.S.

25   v. Orlando Ventura*, 537 U.S. 12, 18 (2002)). "Where there is conflicting evidence, and not

26   all essential factual issues have been resolved, a remand for an award of benefits is

27   inappropriate." *Abdullah v. Colvin*, 639 F. App'x 516, 517 (9th Cir. 2016).

28         Third, if a court concludes that no outstanding issues remain and further proceedings

1     would not be useful, a court may find the relevant testimony credible as a matter of law.

2     *Treichler*, 775 F.3d at 1101. Then, a court may determine "whether the record, taken as a

3     whole, leaves 'not the slightest uncertainty as to the outcome of [the] proceeding.'" *Id.*

4     (quoting *N. L. R. B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969)). When all three

5     elements are met, a court may then remand a case to the agency for an immediate award of

6     benefits. *Id.* Even if all three elements are met, however, it is still in a court's discretion

7     whether to remand a case for additional evidence or simply award benefits. *Dominguez*,

8     808 F.3d at 407; *Murrieta v. Comm'r of Soc. Sec. Admin.*, No. CV-19-04865-PHX-DWL,

9     2020 WL 6883138, at *5 (D. Ariz. Nov. 24, 2020) (citing *Treichler*, 775 F.3d at 1101–02);

10    *see Connett*, 340 F.3d at 874–76; *Harris v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08159-

11    PCT-DWL, 2020 WL 5939736, at *7 (D. Ariz. Oct. 7, 2020).

12    **2.    Discussion**

13    Here, the parties agree that the first element has been satisfied. As discussed *supra*,

14    the ALJ failed to provide legally sufficient reasons for assigning little weight the medical

15    opinions of Dr. Wechsler and NP Dundon. *See supra* Section III.a.

16    The parties disagree, however, on whether the second element has been satisfied.

17    Plaintiff argues that the record is fully developed because the opinions of Dr. Wechsler and

18    NP Dundon clearly establish that Plaintiff is disabled. (Doc. 17 at 21). The Commissioner

19    asserts that further administrative proceedings are needed because the record "is replete

20    with evidence showing that Plaintiff's impairments would not preclude her from

21    performing all competitive work activity." (Doc. 20 at 6). The Court agrees with the

22    Commissioner that there are inconsistencies in the record that further administrative

23    proceedings would help resolve. These inconsistencies can be found in the opinions and

24    notes of Dr. Wechsler and NP Dundon and when comparing the opinions of Dr. Wechsler

25    and NP Dundon to other portions of the record.

26    **A.    The Opinions and Notes of Dr. Wechsler and NP Dundon**

27    To begin, the medical opinions and notes of Dr. Wechsler and NP Dundon are not

28    entirely consistent with each other or themselves. For example, NP Dundon examined

1    Plaintiff on March 18, 2016 and opined that Plaintiff had "increased difficulty with balance,

2    she is dragging her left leg more and she has had multiple falls." (Doc. 14-11 at 5). NP

3    Dundon went on to recommend that Plaintiff "use a walker to prevent falls [because

4    Plaintiff] does not have very good balance with just a cane." (*Id.* at 6). In the same report,

5    however, NP Dundon noted that Plaintiff reported "no difficulty with gait or walking," had

6    a normal gait and station, and could ambulate independently. (*Id.* at 5–6). Additionally, NP

7    Dundon noted that Plaintiff had "been having a lot of symptoms of headache, nausea and

8    increased weakness in the lower extremity," but also indicated that Plaintiff had normal

9    bulk in the lower extremities and reported no headaches and normal appetite. (*Id.*).

10   Further, Plaintiff had an appointment with Dr. Wechsler on March 4, 2016 in which

11   Dr. Wechsler noted Plaintiff's "recurrent episodes of vertigo" which included vertigo on

12   the date of the visit. (*Id.* at 50–51). However, on her March 18, 2016 visit with NP Dundon,

13   Plaintiff reported no symptoms of vertigo. (*Id.* at 5). Further, on March 4, 2016, Dr.

14   Wechsler reported that Plaintiff had normal bilateral motor strength and normal gait in her

15   neurological check, (*id.* at 51), but on March 18, 2016 Plaintiff reported multiple falls, poor

16   balance, and "dragging her left leg" when she walked, (*id.* at 5–6).

17   By citing these inconsistencies, the Court does not mean to suggest that Plaintiff did

18   not experience the symptoms of which she complained as it would be inappropriate for the

19   Court to look at certain portions of the medical record and consider only how Plaintiff

20   presented on the days of her medical appointments. *See Gerstner v. Berryhill*, 879 F.3d

21   257, 262 (7th Cir. 2018) (noting it was inappropriate for an ALJ to fixate on select portions

22   of the medical record while ignoring others). The Court only means to point out that there

23   are inconsistencies between the medical opinions and notes of Dr. Wechsler and NP

24   Dundon. Further administrative proceedings should be held to address these and other

25   inconsistencies. *See Mitchell v. Saul*, No. 19-CV-03249-JSC, 2020 WL 4226518, at *14

26   (N.D. Cal. July 23, 2020) (holding that further administrative proceedings were needed,

27   citing two inconsistencies in treating physicians' opinions and notes, even though treating

28   physicians' opinions were erroneously given little weight by the ALJ).

- 14 -

### B.      The Rest of the Record

As discussed *supra*, Plaintiff's response to treatment, portions of the objective medical evidence, and Plaintiff's daily activities are not completely consistent with a finding of total disability. *See supra* Section III.b.2.   Thus, there are inconsistencies between Dr. Wechsler's and NP Dundon's opinions that Plaintiff is unable to work in any capacity and the portions of the record discussed *supra*.

Further, Dr. Wechsler's and NP Dundon's opinions that Plaintiff is totally disabled conflict with the opinions of Dr. Johnson and Dr. Hirsch who found that Plaintiff was capable of sedentary work. (Docs. 14-3 at 29; 14-4 at 28–32, 50–56, 73–79). Plaintiff argues that the opinions of these physicians cannot contradict the opinions of Dr. Wechsler and NP Dundon because Dr. Johnson and Dr. Hirsch are non-examining physicians. (Doc. 21 at 3 (citing *Gallant*, 753 F.2d at 1454). It is true that the opinions of non-examining physicians, standing alone, would not provide substantial evidence to dispute Dr. Wechsler's and NP Dundon's opinions. *Gallant*, 753 F.2d at 1454 (holding that reports of non-examining physicians did not provide substantial evidence because they were "contradicted by all other evidence in the record"). Dr. Johnson's and Dr. Hirsch's opinions, however, are not standing alone. Dr. Johnson's and Dr. Hirsch's opinions are supported by Plaintiff's response to treatment, portions of the objective medical evidence, and Plaintiff's daily activities. *See supra* Section III.b.2.

Because Dr. Johnson's and Dr. Hirsch's opinions find support in the record, they constitute conflicts with the opinions of Dr. Wechsler and NP Dundon that Plaintiff is disabled. Further proceedings should be held to address these conflicts. *See Radha v. Colvin*, No. CV-15-01400-PHX-ESW, 2016 WL 4253960, at *12 (D. Ariz. Aug. 11, 2016) (holding that further administrative proceedings were needed because there were inconsistencies in the medical record between physician opinions, objective medical evidence, and plaintiff's activities).

### 3.      Conclusion Regarding Remedy

Because there are outstanding inconsistencies that further administrative

proceedings would help resolve, the Court cannot proceed to step three and deem the opinions of Dr. Wechsler and NP Dundon to be true. See *Dominguez*, 808 F.3d at 410; *Murillo v. Colvin*, No. 15-CV-01325-JSC, 2016 WL 777793, at *24 (N.D. Cal. Feb. 29, 2016). Rather, the Court must remand for further proceedings. *See Dominguez*, 808 F.3d at 409 (holding that the erroneously weighted opinions of plaintiff's treating physician could not be credited as true, in part, because they conflicted with treating physician's notes and the opinions of non-examining physicians); *Bryant v. Colvin*, No. 15-CV-02982-JSC, 2016 WL 3405442, at *26 (N.D. Cal. June 21, 2016) (holding that the improperly weighted opinions of plaintiff's treating and examining physicians could not be credited as true because the entire record left open the question of plaintiff's exact disability status and because of inconsistences among physicians); *Murillo*, 2016 WL 777793, at *24 (holding erroneously weighted opinions of examining physicians would not be credited as true because of inconsistencies in the record).

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** that the ALJ decision is **VACATED** and the case is **REMANDED** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 26th day of April, 2021.

James A. Teilborg
Senior United States District Judge